# UNITED STATES DISTRICT COURT

## DISTRICT OF MARYLAND

July 15, 2013

W. James Nicoll, Esq.
Jenkins, Block & Associates, P.C.
1040 Park Avenue, Suite 206
Baltimore, MD 21201

Alex S. Gordon, Esq.
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201

> Re:  Susan Rosalie Springer v. Michael J. Astrue,
> Commissioner, Social Security, Civil Action No. 1:11-cv
> -03407

Dear Counsel:

Plaintiff, Susan Rosalie Springer, by her attorney, William James Nicoll, filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act").  This case has been referred to the undersigned magistrate judge by consent

of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule

301. No hearing is necessary. Local Rule 105.6.

Currently pending before the Court are cross motions for

summary judgment and plaintiff's request for remand in the

alternative. The Court acknowledges that Ms. Springer has a

serious medical history and has faced many personal

difficulties. However, the Court has concluded that under the

applicable law, she is not entitled to disability. For the

reasons that follow, the Court hereby DENIES plaintiff's motion

for summary judgment, GRANTS defendant's motion for summary

judgment, and AFFIRMS the decision of the Commissioner.

## I.   Procedural History

On December 29, 2008, plaintiff applied for DIB and SSI

benefits, alleging that she had become unable to work beginning

November 1, 2004 due to physical and mental illness. (R. 11,

13).

Plaintiff's applications for DIB and SSI were denied

initially on August 27, 2009 and upon reconsideration on March

25, 2010. (R. 11). On May 5, 2010, the plaintiff filed a

request for a hearing by an Administrative Law Judge ("ALJ").

(R. 11). On May 19, 2011, ALJ William K. Underwood held a

hearing. (R. 11). On May 26, 2011, the ALJ issued an unfavorable

written decision that plaintiff was not disabled within the

meaning of the Act. (R. 19).

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the agency. (R.1). Plaintiff now seeks review of that decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1).

## II. Factual History

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record in all material respects, hereby adopts it. (ECF No. 21-2, 2-9).

## III. ALJ Findings

In reviewing a claimant's eligibility for DIB and SSI, an ALJ must consider all of the evidence in the record and follow the sequential five-step analysis set forth in the regulations to determine whether the claimant is disabled as defined by the Act. 20 C.F.R § 416.920(a).[1] If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further. 20 C.F.R. § 404.1520(a)(4). After proceeding through each of the required steps, the ALJ in this case concluded that Ms. Springer was not disabled as defined by the Act. (R. 19).

---

[1] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

At the first step, the claimant must prove that he or she is not engaged in "substantial gainful activity."[2]  20 C.F.R. § 416.920(a)(4)(i).  If the ALJ finds that the claimant is engaged in "substantial gainful activity," he or she will not be considered disabled.  (Id.).  Here, the ALJ found that although the plaintiff did work after the alleged disability onset date, that work activity did not rise to the level of substantial gainful activity.  (R. 13).

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit her ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  In addition, there is a durational requirement that the claimant's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that Ms. Springer suffered from two severe impairments: chronic pain from a gunshot wound and major depressive disorder.  (R. 13).  The ALJ also noted that Ms. Springer has asthma and other respiratory issues, carpal tunnel syndrome, arthritis, deep vein thrombosis, and migraines,

---

[2] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial if it involves significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when she worked before.  20 C.F.R. § 416.972(b).  Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

4

but that these impairments were non-severe. (Id.). The ALJ found that Ms. Springer's asthma is well controlled, that she has mild bilateral carpal tunnel syndrome with no concerns noted, that MRIs of her back and X-rays of her hips were normal, and that no further treatment or concern was noted in the medical records regarding her deep vein thrombosis. (R. 13, 14). The ALJ also noted that Ms. Springer did not claim these impairments were severe. (R. 13).

At the third step, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If one of the Listings is met, disability will be found without consideration of age, education, or work experience. 20 C.F.R. § § 404.1520(d), 416.920(d). Here, the ALJ found that Ms. Springer does not have an impairment or combination of impairments that meets or equals an impairment enumerated in the "Listing of Impairments." (R. 14).

Before an ALJ advances to the fourth step of the sequential analysis, he must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a

regular and continuing basis.  Social Security Ruling (SSR) 96-8p.  The ALJ must consider even those impairments that are not "severe."  20 C.F.R. § 404.1545(a)(2).

In determining a claimant's RFC, an ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test.  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529.  First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms.  20 C.F.R. § 404.1529(b).  Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant.  20 C.F.R. § 404.1529(c).  The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence.  SSR 96-7p.  To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations.  (Id.).

Here, the ALJ determined that Ms. Springer has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can do no more than occasional postural activities. (R. 15). The ALJ found she is further limited to unskilled work that is repetitive in nature and involves routine, general goals vs. production goals, few if any changes in the work setting, and no need to plan work or set goals. (R. 15).

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Ms. Springer's RFC precludes her past work as a short order cook, cashier, machinist, and day care instructor. (R. 18). The ALJ therefore concluded that Ms. Springer is unable to perform any past relevant work. (Id.).

Where, as here, the claimant is unable to resume her past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, the claimant is capable of other work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this step, the burden of proof shifts to the agency to establish that the claimant retains the RFC to engage in an alternative job which exists in the national economy. McLain v.

Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v.

Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The agency must

prove both the claimant's capacity to perform the job and that

the job is available.  Grant v. Schweiker, 699 F.2d 189, 191

(4th Cir. 1983).  Before the agency may conclude that the

claimant can perform alternative skilled or semi-skilled work,

it must show that she possesses skills that are transferable to

those alternative positions or that no such transferable skills

are necessary.  McLain, 715 F.2d at 869.

    In this case, the ALJ found that although Ms. Springer is

unable to perform her past relevant work, given her age,

education, work experience, and RFC, jobs exist in significant

numbers in the national economy that she can perform.  (R. 18).

Based on the testimony of the vocational expert, the ALJ

determined that Ms. Springer could perform the requirements of

representative occupations such as night cleaner (880,000 jobs

nationally, 770 jobs locally), sorter (430,000 jobs nationally,

230 jobs locally), and hand packer (706,000 jobs nationally, 690

jobs locally).  (R. 19).

## IV.  Standard of Review

    The function of this Court on review is to leave the

findings of fact to the agency and to determine upon the whole

record whether the agency's decision is supported by substantial

evidence, not to try plaintiff's claim de novo.  King v.

_Califano_, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); _Craig v. Chater_, 76 F.3d 585, 589 (4th Cir. 1996); _Coffman v. Bowen_, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance."  _Laws v. Celebrezze_, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion."  _Richardson v. Perales_, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  _Craig_, 76 F.3d at 589; _Hayes v. Sullivan_, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence.  _Snyder v. Ribicoff_, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them.  _Underwood v. Ribicoff_, 298 F.2d 850 (4th Cir. 1962).  However, despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."  _Coffman_, 829 F.2d at 517.  The

Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V. Discussion

Plaintiff makes three arguments on appeal. First, plaintiff argues that the ALJ failed to properly evaluate her asthma, carpal tunnel syndrome, arthritis, and migraines as severe impairments. (ECF No. 16, 5). Second, plaintiff argues that the ALJ failed to attribute proper weight to the opinions of her treating physician. (ECF No. 16, 9, 10). Third, plaintiff argues the ALJ failed to adequately develop the record. (Id.). The Court shall consider each in turn.

### A. The ALJ Did Not Err in His Evaluation of Plaintiff's Asthma, CTS, Arthritis, and Migraines as Non-Severe

Plaintiff argues that the ALJ erred in finding that her asthma and respiratory problems, carpal tunnel syndrome, arthritis, and migraines were non-severe impairments. Specifically, plaintiff contends that the ALJ's analysis at step two was insufficient under existing precedent. Plaintiff further argues the ALJ failed to address medical evidence of record demonstrating that these impairments "should have been found as severe impairments." (ECF No. 16, 8).

Defendant responds that the ALJ did not err because plaintiff's asthma was controlled by medication, and treatment notes suggest her respiratory issues were minimal. (ECF No. 21-2, 18). As to plaintiff's carpal tunnel syndrome, defendant cites a 2009 study in which the impairment was characterized as "mild" and notes a lack of evidence of functional limitation. (Id. at 19). Defendant argues that the ALJ properly classified plaintiff's arthritis as non-severe, citing normal MRI and X-ray results, treatment notes indicating minimal physical limitation, and plaintiff's use of medication to control her pain. (Id. at 20). Finally, defendant contends that the record indicates plaintiff's migraines were not the result of a serious neurological problem and that plaintiff did not consistently report having headaches to doctors or identify them as a significant burden at the ALJ hearing. (Id.).

The severity evaluation is a de minimis "threshold screening standard to eliminate frivolous claims at an early stage in the process." Bowen v. Yuckert, 482 U.S. 137, 180 (U.S. 1987); see also Felton-Miller v. Astrue, 459 Fed. Appx. 226, 230 (4th Cir. 2011). 20 CFR 404.1521 defines a non-severe impairment as one that "does not significantly limit . . . physical or mental ability to do basic work activities." SSR 85-28, written "[t]o clarify the policy for determining when a person's impairments may be found 'not severe'," states that an

impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28. Severe impairments must have lasted or be expected to last twelve months. 20 C.F.R. §§ 404.1509, 1520(a)(ii). If an ailment is controlled by medication such that it does not cause work-related limitations, the ailment is not severe. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)(noting that if a symptom can be reasonably controlled by medication or treatment it is not disabling); Bostic v. Astrue, 2012 U.S. Dist. LEXIS 94324 (S.D. W. Va. July 9, 2012)(finding impairments were non-severe when medication was prescribed to control them).

A determination that an impairment is not severe "requires a careful evaluation of the medical findings that describe the impairment" and "an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR No. 96-3p.

## 1. Sufficiency of the ALJ's Step Two Analysis

As a preliminary issue, plaintiff contends that the ALJ's step two analysis was insufficient under existing precedent. In making this argument, plaintiff relies on this Court's decision in Albert v. Astrue, CIV.A. CBD-10-2071, 2011 WL 3417109 (D. Md.

July 29, 2011).  Plaintiff states that the ALJ's analysis "falls woefully short of the analysis required by Albert."  (ECF No. 16, 8).

In Albert, the ALJ failed to discuss the claimant's alleged foot impairment at step two or at any subsequent steps.  Albert, WL 3417109, at *2.  The issue was "not that the ALJ merely failed to articulate his reasoning for a finding.  The ALJ never provided a finding to be analyzed."  (Id.).

Here, the ALJ made findings as to the severity of each of plaintiff's impairments at step two.  (R. 13).  He also generally provided evidence-based reasons for his findings.  (Id.).  It is true that the step two standard is a slight one.  It is also true that the ALJ's analysis at step two was not particularly long, and that he did not provide reasons for his finding as to plaintiff's migraines.  However, the ALJ thoroughly addressed plaintiff's migraines and other impairments throughout his opinion, particularly in his RFC analysis.  (R. 15-18).  There is no prejudice to the plaintiff if the ALJ sufficiently examined the impairment at later steps.  See Fountain v. Astrue, No. CBD-11-1884, 2013 WL 145873, at *3-4 (D. Md. Jan. 11, 2013)(distinguishing Albert because the ALJ sufficiently considered plaintiff's impairments at other steps in the decision); Ellis v. Astrue, No. TMD 10-1020M, 2011 WL 5877215, at *2 (D. Md. Nov. 22, 2011) (noting there is no

prejudice to the claimant from an error at step two if the ALJ
sufficiently considers the effects of an impairment at
subsequent steps).

The Court finds that the ALJ's analysis of the severity of
plaintiff's impairments was legally sufficient.  Whereas in
Albert it was not clear the ALJ had considered plaintiff's foot
impairment at all, the ALJ in this case provided specific
findings with evidentiary support at step two and subsequent
steps.

### 2. Asthma and Respiratory Issues

In his analysis of plaintiff's asthma and respiratory
issues, the ALJ cited a 2008 treatment note indicating
plaintiff's asthma is fairly well controlled.  (R. 13).  He also
noted that the plaintiff did not claim the asthma or any of the
aforementioned impairments were severe.  (Id.).  The ALJ later
acknowledged that treatment notes documented a history of
asthma, but that the notes also reflected "normal, pleasant
appearance" and "no abnormalities" upon examination.  (R. 16).

The Court finds the ALJ's conclusion with regard to
plaintiff's asthma to be supported by substantial evidence.
Plaintiff cites a 2009 Physical Residual Functional Capacity
Assessment stating that she should avoid concentrated exposure
to extreme cold and fumes, odors, dusts, gases, and poor
ventilation.  (ECF No. 16, 8).  However, the majority of the

medical evidence of record indicates that plaintiff's respiratory issues do not present more than a minimal effect on her ability to do basic work activities.

The same assessment cited by plaintiff indicates that she may have "unlimited" exposure to extreme heat, wetness, and humidity. (R. 308). Treatment records show that plaintiff uses an albuterol inhaler and that her asthma is "fairly well controlled." (R. 228, 283). Multiple treatment notes document normal respiratory function without distress. (R. 259, 282, 339, 340, 614). In January 2009, plaintiff's pulmonary study results were "normal" with "minimal obstructive disease in the small airways." (R. 329, 498). The interpretation notes document "slight reduction in the FEF 25-75." (Id.). A methacholine challenge resulted in "significant reduction" at the highest concentration of methacholine, but "complete reversal" with the administration of bronchodilators. (R. 501). A 2010 physical RFC assessment does not indicate any environmental limitations for plaintiff. (R. 655). Pulmonary consultations from 2010 and 2011 rule out restrictive pulmonary disease and note "mild obstruction." (R. 589, 590). An accompanying treatment plan recommends continuation of current medications. (R. 589).

The ALJ reviewed the medical record in evaluating plaintiff's asthma and respiratory issues. (R. 13, 16). While

the record reflects a history of pulmonary disease, the ALJ did not commit clear error in weighing the evidence and determining that plaintiff's respiratory issues were non-severe. Moreover, according to the record, the ailment is controlled by medication. (R. 228, 283). The Court finds that there is substantial evidence to support the ALJ's determination that plaintiff's asthma and respiratory issues were not a severe impairment.

### 3. Carpal Tunnel Syndrome

With regard to plaintiff's carpal tunnel syndrome, the ALJ cited a July 2009 EMG study, which documented "mild bilateral carpal tunnel syndrome." (R. 13). He also stated there were "no concerns noted." (R. 14). Finally, he found that the plaintiff did not claim the aforementioned impairments were severe. (R. 13).

The Court finds the ALJ's conclusion with regard to plaintiff's carpal tunnel syndrome to be supported by substantial evidence. Plaintiff refers the Court to broad portions of the record in challenging the ALJ's finding. (ECF No. 16, 8). However, the medical records therein simply document the existence of plaintiff's carpal tunnel syndrome and reveal little else about its extent or impact on the plaintiff.

Plaintiff's medical history from a 2010 hospital report reveals she had carpal tunnel syndrome surgery in 1997. (R.

428).  The 2009 study cited by the ALJ disclosed "abnormal nerve conduction...due to bilateral, mild degree carpal tunnel syndrome." (R. 479).  The doctor who performed the study wrote that he would "monitor the patient closely" and would order an imaging study of the cervical spine if the patient's problems persisted. (Id.).

The record demonstrates that carpal tunnel syndrome is a part of plaintiff's medical history.  However, given the lack of evidence to the contrary, the ALJ was entitled to weigh the doctor's characterization of the syndrome as "mild" and the doctor's decision to simply monitor plaintiff as evidence against a finding of severity.  Therefore, the Court finds that there was substantial evidence to support the ALJ's finding as to plaintiff's carpal tunnel syndrome.

**4. Arthritis**

In evaluating plaintiff's arthritis, the ALJ noted, "MRIs of her back and X-rays of her hips were normal" and cited to several sections of the record. (R. 14).  He later cited medical examinations showing "full range of motion of all extremities and a normal gait" as well as normal ambulation. (R. 16).  Moreover, the ALJ noted Plaintiff's daily regimen of pain medication. (R. 16-17).  Finally, the ALJ found that plaintiff did not claim the aforementioned impairments were severe. (R. 13).

The Court finds the ALJ's conclusion with regard to plaintiff's arthritis to be supported by substantial evidence. Plaintiff cites a 2009 RFC assessment noting that she could perform all postural limitations occasionally except that she should never be required to climb ladder/rope/scaffolds. (ECF No. 16, 8). This limitation was attributed to "migraines; back pain." (ECF No. 16, 8). Plaintiff also cites to medical records documenting osteoarthritis of the hands, hips, and knees. (Id.).

X-rays of plaintiff's lower back from April 2008 showed "[m]inimal degenerative changes" and "otherwise normal appearance" of the lumbar spine. (R. 347). MRIs from July 2008 showed her spine was "very normal." (R. 269). Hip imaging from 2008 and 2009 showed plaintiff's hip joint space bilaterally was "unremarkable" and that there was "no evidence of arthritis." (R. 496). Treatment notes from 2010 and 2011 documented full range of motion and a normal gait (R. 610, 614). There is also evidence throughout the record of plaintiff's use of medication to control her pain. (R. 269, 356, 492, 538, 609, 616, 618, 631, 634, 636, 649, 655).

While arthritis is documented in the record, there is substantial evidence to suggest it did not significantly limit plaintiff's capabilities. Accordingly, the ALJ did not commit

clear error in determining plaintiff's arthritis was not a severe impairment.

**5. Migraines**

Plaintiff argues that the ALJ erred in failing to treat her migraines as a severe impairment at the second step of his analysis. Plaintiff cites a 2009 RFC assessment that states she should never be required to climb ladder/rope/scaffolds due to "migraines; back pain." (ECF No. 16, 8). She cites the same assessment directing her to "avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases, poor ventilation, etc." in part due to migraine headaches. (Id.). Plaintiff was also previously prescribed Topamax to manage her headaches. (R. 530). However, it "made her feel bad" and she experienced an episode of syncope, or loss of consciousness, during the time period in which she was taking it. (Id.).

The ALJ did not properly support his finding as to plaintiff's migraines at step two. However, he did consider plaintiff's migraines in his evaluation of plaintiff's RFC. (R. 16). As discussed, the Court finds that this error did not result in prejudice to the plaintiff and was thus harmless. See Fountain, WL 145873, at *3-4; Ellis, 2011 WL 5877215, at *2.

The ALJ extensively addressed plaintiff's migraines as well as her treatment from Dr. Jamal Ali in his analysis of

plaintiff's RFC.[3]  (R. 16).  He found that an MRI of plaintiff's brain showed "no abnormal signal from the white matter."  (Id.).  He also noted that Dr. Ali saw improvement in plaintiff's symptoms and no evidence of sensory deficit.  (Id.).  The ALJ next found that Dr. Ali believed a serious neurological problem was unlikely and that Dr. Ali prescribed Topamax for plaintiff's headaches.  (Id.).  Finally, the ALJ cited the results of an EEG study with a treating physician (performed in response to episodes in which the plaintiff passed out) that returned normal.[4]  (Id.).

## B. The ALJ Did Not Err in Giving Dr. Anton's Opinion Limited Weight

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Constance Anton as that of a treating physician, requiring greater weight than the opinion of a non-treating physician.  Dr. Anton opined that plaintiff had "poor

---

[3] While the severity of plaintiff's migraines is arguable, there is substantial evidence in the record to support a finding that they are non-severe.  A July 2009 treatment note stated that Ms. Springer had "[n]o migraines lately."  (R. 514).  An examination showed no sensory deficit, an accompanying MRI was normal, and the doctor noted a low likelihood of a serious neurological problem.  (R. 477).  In August 2009, plaintiff denied having bad headaches.  (R. 530).  An August 2009 EEG was "unremarkable," and her cranial nerves remained normal.  (R. 473).

[4] Plaintiff suggests that her impairments, considered in combination, should have been found as severe.  While the ALJ did not *explicitly* analyze the severity of plaintiff's impairments in combination at the second step, he performed a thorough analysis of plaintiff's impairments and considered them in combination throughout his written decision.  (R. 13-19).  An error at step two may require reversal and remand where the ALJ improperly discounts or ignores evidence of the allegedly severe impairment at the other steps of the sequential analysis.  Fountain v. Astrue, No. CBD-11-1884, 2013 WL 145873, at *4 (D. Md. Jan. 11, 2013).  However, this is not the case here.

to [no]" ability to adjust to a job in all but two areas, with "fair" ability to relate to co-workers and use judgment. (R. 603). Plaintiff contends that, had the ALJ given Dr. Anton's opinion proper weight, a favorable decision would have resulted. (ECF. No. 16, 9).

Defendant responds that Dr. Anton's opinion was inconsistent with the overall medical evidence of record, and therefore, the ALJ properly afforded it limited weight. (ECF. No. 21-2, 23). Specifically, defendant argues that Dr. Anton's restrictive opinion as to plaintiff's mental health was unsupported by the rest of the objective medical assessments and treatment notes. (Id.).

The opinions of treating physicians are generally given a measure of deference by courts due to their "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 CFR 404.1527(a)(2). If a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is given controlling weight. Id. However, "by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

If a treating source opinion does not merit "controlling weight," it should be weighed according to the factors promulgated by the Commissioner in the regulations. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188 (Jul. 2, 1996). The factors are:

> (1) The length of the treatment relationship and the frequency of examination;
> (2) The nature and extent of the treatment relationship;
> (3) The extent to which the opinion is supported by medical evidence of record;
> (4) The consistency of the opinion with the record as a whole;
> (5) The specialization of the treating physician; and
> (6) Any factors which tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).[5]

While a non-controlling treating source opinion is entitled to deference, an ALJ may still find, after an analysis of the above factors, that the opinion is only entitled to slight weight. See, e.g. Thompson v. Astrue, 442 Fed. Appx. 804, 808 (4th Cir. 2011)(affirming decision to afford less weight to a treating physician). If, for example, a treating physician's final opinion "was not supported by treatment notes or by other information on file," an ALJ may discount the opinion. Russell

---

[5] In this case, the parties raise issues as to factors (3) and (4). As plaintiff does not challenge the adequacy of the ALJ's consideration of the other factors, they will not be addressed. However, it is clear from the ALJ's opinion that he knew Dr. Anton was plaintiff's "[t]reating psychiatrist" (R. 17) and noted several medical encounters that plaintiff had with Dr. Anton (R. 17).

v. Comm'r of Soc. Sec., 440 Fed. Appx. 163, 164 (4th Cir. 2011);

see also Anderson v. Comm'r, 127 Fed. Appx. 96, 97 (4th Cir.

2005).

Here, the ALJ reviewed Dr. Anton's opinion and decided to

give it limited weight.  The ALJ made his decision "because [the

opinion] is inconsistent with the overall medical evidence of

record detailed above."  (R. 17).  The ALJ further stated: "The

record reflects that the claimant's mental health condition had

improved, with consistently high GAFs, functional activities of

daily living, and her own admissions that medications helped

with her depression."  (R. 18).

The Court finds that the record adequately supports the

attribution of limited weight to Dr. Anton's opinion.  In her

March 2011 assessment of plaintiff's ability to perform work-

related activities, Dr. Anton rated plaintiff's ability to

follow work rules, deal with the public, interact with

supervisors, deal with work stressors, function independently,

and maintain attention/concentration as "poor to none," with

"fair" ability to relate to co-workers or use judgment (R. 603)

and some limitations in ability to adjust personally and

socially. [6]  (R. 604).

---

[6] Dr. Anton further noted that plaintiff hyperventilates outside of the house
and doesn't usually drive because of this, nor can she drive "any distance."
(R. 603, 605).  The doctor reported that plaintiff is not comfortable out in
public, develops suicidal thoughts when she gets too stressed, has problems
carrying out instructions, and "forgets a lot, frequently because of feeling

However, the ALJ found that plaintiff's overall mental health record reflected moderate conditions and overall improvement, contrary to Dr. Anton's report. (R. 17). The ALJ discussed plaintiff's attempted suicide in 1990 and her hospitalization in August 2005 for suicidal ideation. (Id.). He noted that plaintiff's Global Assessment of Functioning (GAF) score from Dorothea Dix Hospital was 30 upon entry, but had improved to 50 upon discharge four days later. (Id.). December 2006 records from Washington County Hospital concerning a methadone overdose indicated a moderate GAF of 55, despite diagnoses of major depressive disorder and dependent personality disorder. (Id.). The ALJ noted further GAF scores from this hospital of 60 and 65. (Id.). The ALJ also cited December 2008 treatment notes from plaintiff's treating physician, Dr. Beckwith, in which plaintiff indicated Cymbalta worked well for her depression. (Id.).

Next, the ALJ reviewed Dr. Daniel J. Freedenburg's July 2009 psychiatric consultative examination. (R. 17). He found that Dr. Freedenburg diagnosed a mood disorder, but had ruled out dysthymia. (Id.). The ALJ cited a "very functional" GAF of 75-80 from this examination. (Id.). He found that plaintiff again reported Cymbalta helped with her depression. (Id.). The

_____

depressed." (R. 603, 604). Finally, Dr. Anton wrote that plaintiff "has had to leave a situation where there are a lot of strangers" due to "trust issues related to a rape at 13." (Id.).

ALJ stated: "The claimant dressed and bather [sic] herself daily, cleaned her house, and was able to drive. She noted that she got along with others well, had not had previous problems with coworkers, and could follow simple instructions." (Id.). The plaintiff's insight and judgment were intact, and Dr. Freedenburg noted that she did not appear to be an individual with major depressive illness. (Id.). The ALJ related the examination's conclusion that plaintiff was "cognitively intact." (Id.).

The ALJ next reviewed plaintiff's records from the Mental Health Center of Western Maryland. The record reflects that plaintiff was seen by different providers at the Mental Health Center on about a monthly basis from August 2009 through March 2011, with treatment notes from September 2009 through January 2010 (R. 544-552), and medication orders from after that time. (R. 600-602). The record also contains Dr. Anton's March 2011 assessment of plaintiff's work-related capabilities. (R. 603-606). The ALJ's review noted that GAF scores from the Mental Health Center were 50-60 in August, September, and November 2009. (R. 17). Further, the ALJ cited October 2009 treatment notes from the Mental Health Center in which plaintiff had mild to moderate symptoms and reported feeling better with less anxiety. (R. 17). The ALJ discussed an examination by Dr. Anton from December 17, 2009 in which plaintiff reported

stability and continued improvement. (Id.). In this exam, Dr. Anton described plaintiff's condition as serious, but noted a lack of change. (Id.).

The ALJ next found that, from February to November 2010, Dr. Beckwith, plaintiff's primary care physician, indicated that plaintiff's judgment and insight were within normal limits, as were her mood and affect. (R. 17). These notes also reflected that plaintiff's recent and remote memory were intact and that her affect was "appropriate." (Id.). Finally, the ALJ cited plaintiff's testimony that she could perform some household chores, leave the house to do some shopping, and make trips to doctors' offices. (R. 15).

The Court finds that substantial evidence supported the ALJ's attribution of limited weight to Dr. Anton's 2011 opinion. The ALJ provided a thorough review of plaintiff's mental health record. He found that Dr. Anton's opinion as to plaintiff's work-related abilities was inconsistent with the majority of the evidence of record. Thus, the ALJ did not commit error in attributing limited weight to the opinion.

### C. The ALJ Adequately Developed the Record

Plaintiff argues that the ALJ gave little weight to Dr. Anton's opinion in part due to a misconception regarding the number of times Dr. Anton treated plaintiff. (ECF. No. 16, 10). She asserts that the ALJ improperly based his decision on only

two treatment sessions in the record when others occurred. (Id.).  Accordingly, plaintiff argues the ALJ failed to adequately develop the record.  (Id.).  Plaintiff emphasizes that her counsel told the ALJ she was under the monthly care of Dr. Anton.  (Id.)

Defendant contends that the ALJ did not fail to adequately develop the record, as plaintiff's counsel repeatedly failed to submit the relevant treatment notes throughout the disability evaluation process.  (ECF. No. 21-2, 11-12).  Defendant further asserts that, even if the ALJ failed to adequately develop the record, plaintiff has not demonstrated the requisite, resulting prejudice to compel remand.  (Id. at 14).

It is well established in the Fourth Circuit that an ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."  Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).  The key consideration is "whether the record contained sufficient medical evidence for the ALJ to make an informed decision" regarding the claimant's impairment.[7] Craft v. Apfel, No. 97-2551, 1998 U.S. App. LEXIS 24674 (4th Cir. 1998); see also 20 C.F.R. § 416.912 (ALJ will make "every

_____

[7] While this duty is heightened when a claimant is unrepresented by counsel, an ALJ is also required to develop the record for represented plaintiffs where the record is insufficient.  Fleming v. Barnhart, 284 F. Supp. 2d 256, 272 (D. Md. 2003).

reasonable effort to obtain evidence from your own medical sources.").

This requirement does not, however, impose an obligation to "function as the claimant's substitute counsel." <u>Bell v. Chater</u>, 1995 U.S. App. LEXIS 14322 (4th Cir. 1995)(internal citations and quotations omitted). When a plaintiff is represented by counsel, the ALJ ordinarily is "entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored." <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1167–68 (10th Cir.1997). An ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case. <u>Rice v. Chater</u>, No. 94-2001, 1995 U.S. App. LEXIS 9829, at *5 (4th Cir. 1995)(ALJ "is not required to act as plaintiff's counsel")(citations omitted). As such, a remand is appropriate only if the record is so deficient as to preclude the ALJ from making an educated decision as to the extent and effects of plaintiff's disability.

The Court has found no definitive standard in the Fourth Circuit as to when a record is so deficient that an ALJ must develop it. <u>See</u> <u>Smith v. Barnhart</u>, 395 F. Supp. 2d 298 (E.D.N.C. 2005)("there is scant authority in this circuit . . . [indicating] when the administrative record is so 'inadequate' as to trigger the ALJ's heightened duty to . . . supplement the

record before rendering a decision."). However, this Court addressed similar issues to those presented here in two recent cases. See Johnson O/B/O M.J. v. Astrue, No. JKS-09-1244, 2010 WL 3548239 (D. Md. Sept. 10, 2010); Finch ex rel. Finch v. Astrue, No. TMD-08-2706, 2012 WL 748383 (D. Md. Mar. 6, 2012).

In Johnson, the plaintiff argued that the ALJ failed to adequately develop the record because the ALJ did not obtain pieces of evidence from additional relevant sources. See Johnson, 2010 WL 3548239, at *2. The Court disagreed, noting that the ALJ thoroughly evaluated the information in the record and that the plaintiff was given several opportunities to submit the evidence. Id. at *3. The Court also noted that the plaintiff did not explain why she did not submit the evidence she now deemed necessary. Id. Finally, the Court noted the plaintiff failed to demonstrate prejudice, even assuming, arguendo, that the ALJ failed to adequately develop the record. Id.

In Finch, the Court initially found that the ALJ failed to adequately develop the record and remanded the case. See Finch, 2012 WL 748383 at *2. On remand, Plaintiff was initially unrepresented by counsel but was represented at a second supplemental hearing. Id. at *2-3. The ALJ left the record open after the second hearing for plaintiff to submit additional evidence, but plaintiff still did not submit it. Id. The Court

noted that plaintiff could not argue on appeal that the ALJ
failed to develop the record when plaintiff had been in an equal
or better position to do so.  See Id.

Here, the ALJ considered the evidence in the record of Dr.
Anton's treatment of plaintiff.  (R. 17).  The ALJ cited to
plaintiff's medical history with Dr. Anton in his mental health
RFC assessment.  (Id.).  While there may have been additional
treatment notes outside of the record, the record contained
sufficient evidence for the ALJ to review, including treatment
notes from December 2009 and January 2010 (R. 544-552),
medication orders from 2010-2011 (R. 600-602), and Dr. Anton's
March 2011 work-related ability assessment.  (R. 603-606).

In addressing Dr. Anton's opinion evidence, the ALJ stated:
"The record notes two treatment sessions Dr. Anton had with the
claimant."  (R. 17).  Plaintiff contends that the ALJ's decision
to give limited weight to Dr. Anton's opinion was based on an
inaccurate belief that plaintiff had only seen Dr. Anton on two
occasions.  (ECF. No. 16, 10).  Plaintiff further contends that
the ALJ was intent on denying her claim and did not want to give
her the opportunity to correct the record during the hearing.
(Id.).  However, these contentions appear to be unsupported by
the record.  The ALJ's statement about the treatment sessions
appears to be nothing more than an objective, procedural
statement about what evidence was in the record for him to

analyze.  Plaintiff does not dispute that there was only documentation of two substantive medical encounters with Dr. Anton at the time of the hearing.  On review of the record, there indeed only appears to be documentation of two treatment sessions with Dr. Anton.  There are other records of treatment by other providers at the Mental Health Center (R. 544-548), and the ALJ addressed them.  (R. 17).

The ALJ, moreover, did not identify the lack of treatment notes as a reason for his decision.  (R. 17).  The ALJ explicitly stated: "Dr. Anton's opinion is given limited weight *because it is inconsistent with the overall medical evidence of record*..."  (Id.) (emphasis added).  It appears the ALJ simply analyzed the treatment notes present in the record without regard to any possible additional treatment notes, particularly since plaintiff's attorney stated he had no further evidence he planned to submit.  (R. 29).

Indeed, when a claimant is represented by an attorney, the attorney has the responsibility to obtain the information and evidence the claimant wants to submit in support of the claim. 20 C.F.R. §§ 404.1740(b)(1), 416.1540(b)(1).  Here, the attorney has represented the plaintiff before the ALJ, the Appeals Council, and this Court. Yet, he did not raise the issue of additional treatment notes until this proceeding, despite knowing of plaintiff's monthly treatment sessions with Dr.

Anton.  See Finch, 2012 WL 748383 at *2-3; (R. 26, 29, 197; ECF No. 16, 11).  As in Johnson, both the ALJ and the Appeals Council informed plaintiff that she could submit additional evidence.  See Johnson, 2010 WL 3548239, at *3; (R. 9, 28, 29). Plaintiff's attorney responded in the negative when the ALJ asked if he had additional evidence he planned to submit.  (R. 29).  Also similar to Johnson, Plaintiff does not explain why she did not submit the specific evidence she now argues was critical to the ALJ making a proper decision.  See Johnson, 2010 WL 3548239, at *3.  She simply argues that it was the ALJ's responsibility to seek out this evidence, even after plaintiff's counsel denied any intention to submit further evidence.  A claimant bears the primary responsibility of producing evidence to support her application.  The ALJ's duty to obtain additional evidence did not arise here because the record contained substantial evidence from which to make a determination.

Even assuming *arguendo*, that the ALJ failed to adequately develop the record, plaintiff has made no showing how this failure "result[ed] in unfair or clear prejudice."  See Fleming v. Barnhart, 284 F.Supp.2d 256, 272 (D.Md.2003).  Nor has plaintiff shown that remand for consideration of new evidence is appropriate.  In determining whether an ALJ's decision is supported by substantial evidence, "a district court cannot consider evidence which was not presented to the ALJ."  See

Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). However, a court may remand a case to the Commissioner on the basis of new evidence if four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed and not merely cumulative; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the evidence been considered; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to the reviewing court. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir.1985); Miller v. Barnhart, 64 F. App'x 858, 859-60 (4th Cir. 2003); see also 42 U.S.C. § 405(g) (2000)

Here, plaintiff has satisfied the fourth requirement by providing the new evidence to this Court. However, plaintiff has not satisfied any of the other requirements. She asserts that the ALJ "was intent on denying the claim" and made his decision on a faulty basis without the additional treatment notes, but she provides neither a fact-based argument how these additional notes would have changed the outcome nor an explanation of why she never submitted them. (ECF No. 16, 10). Moreover, the notes are generally cumulative of those in the record.

The seven notes span May 2010 through March 2011, and document fifteen-minute treatment/medication management sessions. (ECF No. 17). The sessions took place monthly from May to August 2010 and then every two months from August 2010 onward. (Id.). Consistent with the evidence already in the record and the ALJ's ultimate findings, all of the additional notes show GAF scores of 55-60 and "characteristic/baseline" mental status exams. (Id.). The notes document plaintiff's continued depression, with the repeated comment "still depressed." (Id.). They also document plaintiff's difficulty sleeping, medication side-effects, and external stressors, such as relationship problems and a son in jail. (Id.). Nevertheless, the majority of the notes document "mild-moderate" symptom severity. (Id.).

In January and March 2011, close to the time of the ALJ hearing, plaintiff's symptoms were rated "severe," the middle level of characterization between "mild-moderate" and "extreme." (Id. at 14, 16). However, Dr. Anton noted "improved" in January and "no change" in March. (Id.). In both sessions, plaintiff reported "stability or improvement" from her treatment. (Id.). In the January session, Dr. Anton wrote that despite being "still depressed," plaintiff "feels a little better wi[th] Paxil," and increased plaintiff's medication accordingly. (Id.

at 14-15).  Other than the January note marking "improved," all of the additional treatment notes document "no change."  (Id.).

A June 2010 note states that plaintiff's Cymbalta and Wellbutrin were not working and that plaintiff "stays in bed all d[a]y, shakes alot [sic], [and] cries all the time." (ECF No. 17, 6).  Yet, in the same session, Dr. Anton noted "mild-moderate" symptom severity, "no change," and a GAF of 55. (Id.).  The notes from the next two months show GAF scores of 58 and 60, respectively.  (Id. at 8, 10).  In the July note, Dr. Anton wrote that plaintiff "feels better today," and in the August note, Dr. Anton remarked "Seroquel XR helping—getting up and doing more."  (Id.).

These additional treatment notes, if anything, support the ALJ's attribution of limited weight to Dr. Anton's 2011 work-related ability assessment.  In that assessment, Dr. Anton rated plaintiff's ability as poor-to-none in almost every area of job adjustment.  Yet these notes on the whole reflect consistent GAF scores, mild-moderate symptoms, and a lack of deterioration or even significant change in plaintiff's condition.

For her part, plaintiff makes no fact-based arguments as to the content of these notes and how she was prejudiced by the lack of the ALJ's consideration of these additional treatment notes.  Finally, she has not satisfied the prerequisites to

remand for consideration of new evidence under governing precedent.

## VI.  Conclusion

For the reasons set forth above, the Court finds that the ALJ properly evaluated plaintiff's impairments at step two and did not err in giving limited weight to the opinions of plaintiff's treating physician.  The ALJ adequately developed the record.  Accordingly, the Court DENIES plaintiff's motion for summary judgment (ECF No. 16-1), GRANTS defendant's motion for summary judgment (ECF No. 20), and AFFIRMS the final decision of the Commissioner.

                                    _____/s/_____
                                    Susan K. Gauvey
                                    United States Magistrate Judge